IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **ERIC DICKERSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action Number |
| | ) | **2:12-cv-0842-AKK** |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| **COMMISSIONER,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff Eric Dickerson ("Dickerson") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits to Dickerson.

### I. Procedural History

Dickerson protectively filed applications for Disability Insurance Benefits

and Supplemental Security Income benefits on October 24, 2008, alleging a disability onset date of September 11, 2008 due to blood clots, gastroesophageal reflux disease, and right leg pain. (R. 140, 143, 176). The SSA denied Dickerson's applications initially and on reconsideration, prompting Dickerson to request a hearing before an ALJ. (R. 87, 97, 12). The ALJ subsequently denied Dickerson's claims (R. 14-31), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-7). Dickerson then filed this action for judicial review pursuant to § 205(g) and § 1631(c)(3) of the Act, 42 U.S.C. § 405(g) and § 1383(c)(3). Doc. 1; *see also* doc. 9.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the

evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  A physical or mental

impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard <u>a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself</u>.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

      Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV.  The ALJ's Decision

      Turning now to the ALJ's decision, the court notes initially that the ALJ properly applied the five step analysis.  The ALJ first determined that Dickerson has not engaged in substantial gainful activity since September 11, 2008, and therefore met Step One.  (R. 19).  The ALJ also acknowledged that Dickerson's severe impairments of "recurrent deep vein thrombosis and degenerative disc disease" met Step Two.  *Id*.  The ALJ proceeded to the next step and found that

Dickerson failed to meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 and thus did not satisfy Step Three. *Id*. at 20. Although he answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Dickerson has the residual functional capacity ("RFC") to

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except [Dickerson] can never push or pull with the lower extremities, requires a sit/stand option, can occasionally climb stairs and ramps and can never climb ladders or ropes. Further, [Dickerson] can frequently balance and stoop, occasionally kneel, crouch and crawl, and should never be exposed to hazardous conditions such as heights and moving machinery.

*Id*. The ALJ, therefore, determined that Dickerson is unable to perform any past relevant work. *Id*. at 25. With respect to the pain standard, the ALJ found that Dickerson's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Dickerson's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id*. at 21. As a result, the ALJ proceeded to Step Five where he considered Dickerson's age, education, work experience, and RFC and determined that "there are jobs that exist in significant numbers in the national economy that [Dickerson] can perform." *Id*. at 25. Consequently, the ALJ found that Dickerson

is not disabled.  *Id.* at 27; *see also McDaniel*, 800 F.2d at 1030.

## V.  Analysis

Dickerson raises two contentions of error: (1) that the ALJ failed to find a period of disability of at least twelve months, and (2) that the ALJ's RFC findings are not based on substantial evidence.  *See* doc. 9.  As set forth more fully below, the court finds that the ALJ's decision is supported by substantial evidence.

### A.  Twelve Month Period of Disability

In order to receive disability benefits, a claimant must prove that he is "*[un]able to engage in any substantial gainful activity* by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of *not less than 12 months*[.]"  42 U.S.C. § 423(d)(1)(A) (emphasis added).  Dickerson asserts that the ALJ's finding of no disability, (R. 20-25), is erroneous because "[t]he medical evidence of record reasonably supports a finding that a threshold period of disability in excess of twelve months was established."  Doc. 9 at 5.

To evaluate Dickerson's contentions, the court must review the relevant medical evidence.  In that regard, Dickerson's treatment history began in early 2008 at the North Clinic when Dr. Daniel Cohan diagnosed him with popliteal deep vein thrombosis ("DVT") in his right calf, bilaterial pulmonary emboli,

persistent right leg pain, gastroesophageal reflux disease ("GERD"), and tobacco use. (R. 242). Dr. Cohan gave Dickerson a "GI cocktail," administered an anticoagulant, prescribed Coumadin as ongoing DVT treatment, and released Dickerson after his symptoms "drastically improved." *Id*. at 242, 248. Following this treatment, Dickerson returned for back pain after falling down some stairs but x-rays revealed no fractures or other abnormalities and Dr. Cohan prescribed pain medicines. *Id*. at 271, 269. Dickerson returned for follow up appointments each month until January of 2009 when his anticoagulation levels reached the therapeutic range after months of Coumadin treatment. *Id*. at 288. At that time, Dr. Cohan noted that Dickerson's GERD improved and Dickerson also stated that his back pain was "getting better" and he was "not really needing to take medications for the back." *Id*. During this treatment period, Dickerson asked Dr. Cohan to fill out a form for housing assistance stating that Dickerson would have a disabling condition for no less than 12 months. *Id*. at 265-66. Dr. Cohan, however, declined and stated "I do not anticipate that this problem he has with his leg will last more than 12 months." *Id*.

Following his fall down the stairs, Dickerson had a physical therapy initial evaluation on November 7, 2008 at the Institute for Athletic Medicine Fairview Hand Center. *Id*. at 258. During this evaluation, the doctors noted that Dickerson

became unemployed in September following his DVT, but that he was only expected to be unemployed until February of the following year – about five months. *Id*. Moreover, Dickerson's physical therapy goals stated that he would be able to stand for longer than 20 minutes in 2-4 weeks and that Dickerson would "have no limitation with standing within 10-12 weeks so can return to normal work duties as cook." *Id*. at 260. Additionally, in April of 2009, Dr. Cohan referred Dickerson to Brook West Chiropractic Clinic, PLLC for chronic low back pain treatment. *Id*. at 298. After Dr. Chad Clementson performed an initial consultation and examination, Dr. Thomas Trainer assessed Dickerson with "chronic lumbar myofascial strain/sprain associated with lumbalgia" that could be easily treated with "light force lumbar adjustments, intersegmental lumbar traction and adjunctive physiotherapy modalities." *Id.*

In September and October of 2010, Dickerson presented twice at UAB Hospital Emergency Medicine. *Id*. at 311, 317. The first time, Dr. Andrew Edwards treated Dickerson's GERD with a GI cocktail, prescribed nexium, and discharged Dickerson that same evening as "asymptomatic." *Id*. at 317. The second time, Nurse Practitioner Marie Bolivar-Cano diagnosed Dickerson's back

pain as DJD[2] and also noted probable COPD[3]. *Id*. at 311.

Also in 2010, Dickerson presented at Cooper Green Mercy Hospital for back and calf pain. A physical exam in September yielded normal results and an x-ray showed only "mild degenerative change of the lumbar spine." *Id*. at 308. In November and December, Dickerson returned for anticoagulation treatment because he developed another DVT after being off his Coumadin for about 6 months. *Id*. at 334. At that time, Dr. Martin Bohnenkamp noted that Dickerson "will require lifelong therapy with coumadin" to prevent future DVTs. Dickerson was also diagnosed with COPD with no acute process. *Id*. at 364, 372. Ultimately, Dr. Ahmed Farah performed an inferior vena cava filter placement surgery to prevent recurrent DVTs and noted that Dickerson "tolerated [the] procedure well and [was] taken back to recovery room in stable condition." *Id*. at 390.

Based on the court's review of the medical record, the evidence shows that Dickerson failed to prove an inability to engage in substantial gainful activity

---

[2] DJD, degenerative joint disease, is also called osteoarthritis and refers to a common joint disorder caused by aging and "wear and tear" on a joint. *See* OSTEOARTHRITIS in A.D.A.M. Medical Encyclopedia, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001460/.

[3] COPD, chronic obstructive pulmonary disease, is a lung disease that presents as either chronic bronchitis or emphysema and is commonly caused by smoking. *See* CHRONIC OBSTRUCTIVE PULMONARY DISEASE in A.D.A.M. Encyclopedia, available at http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001153/.

because of a disabling condition lasting at least 12 months. To the contrary, Dickerson stated that back pain from his DJD was improved with pain medicine and that he did not expect to need continued use of the drugs. Also, Dr. Cohan, Dickerson's treating physician, noted that Dickerson's inability to work because of DVT would not last twelve months and, specifically, that he expected Dickerson to return to work in as little as 5 months. Moreover, notes from Dickerson's evaluations for physical therapy and chiropractic care reported expectations of a full recovery and a return to work in, at most, 12 weeks. Finally, although Dr. Farah inserted a filter to prevent Dickerson's DVTs and Dr. Bohnenkamp noted that Dickerson needed lifelong Coumadin treatment, there is no indication in the record that these treatments failed to restore Dickerson to a work-ready state.

Despite Dickerson's assertion to the contrary, his failure to present medical evidence of treatment for any of his impairments between April 2009 and September 2010 is relevant in determining that he did not have a twelve month period of disability. An ALJ may consider not only objective medical evidence, but also other evidence such as failure to seek treatment, use of effective treatment methods like medicines, daily activities, and the claimant's own statements. 20 C.F.R. § 416.929(c)(3); *see also Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984). Given the objective medical evidence, Dickerson's own statements,

the effectiveness of the treatments, and Dickerson's failure to seek treatment for over a year during his alleged period of disability, the court finds that the ALJ's decision is supported by substantial evidence.

**B.     Residual Functional Capacity**

In determining Dickerson's RFC, the ALJ properly applied a two-step process and found (1) that Dickerson has some impairments that could reasonably be expected to produce the alleged pain or other symptoms, but (2) that Dickerson's statements regarding the severity and limiting effects of these impairments are inconsistent with the medical record. (R. 21). Dickerson, however, asserts that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to obtain a medical opinion in the form of a consultative examination and because the ALJ failed to specify the frequency of Dickerson's need to alternate sitting and standing. Doc. 9 at 7-13. Each contention is addressed below.

    1.     <u>Obligation to Obtain a Medical Opinion</u>

Dickerson asserts that the ALJ erred in not obtaining a medical opinion prior to making an RFC determination "in light of the subsequent medical evidence of recurrent deep vein thrombosis requiring filter surgery and lifelong anticoagulation therapy on which the ALJ stated she relied in order to derive her

own RFC." Doc. 9 at 8. The regulation Dickerson cites to support this contention, however, states that a consultative examination is required only "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on your claim." 20 C.F.R. 404.1519a(b). Additionally, the regulation states that "a change in your condition that *is likely to affect your ability to work*, but the *current severity of your impairment is not established*" will "*normally* require a consultative examination[.]" *Id*. (emphasis added). Assuming a change from temporary anticoagulation therapy to lifelong anticoagulation therapy with the aid of surgery constitutes a "change in condition," Dickerson's assertion is still unavailing.

Dickerson failed to show that this changed condition is likely to affect his ability to work or that the severity of his condition is unknown. As noted in subsection A, the medical record does not indicate that these treatments proved ineffective at restoring Dickerson's ability to perform substantial gainful activity.[4] Moreover, the medical record indicates that anticoagulation treatment within the therapeutic range, especially in combination with filter surgery, is expected to prevent recurrent DVT. The severity of Dickerson's current condition can,

---

[4] Dr. Cohan expected Dickerson to have no limitations within five months of his DVT, and the recurrence only appeared after Dickerson stopped anticoagulation treatment for a period of several months. (R. 265-66, 334). This implies that maintaining his Coumadin at theraputic levels will prevent future DVTs.

therefore, be established based on his prior DVT and treatment history. Since the information needed to make a determination "is readily available from the records of [Dickerson's] medical sources[,]" 20 C.F.R. § 404.1519a(a)(1), and an exam is normally required "only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources[,]" *id*. at § 404.1519a(b), the ALJ's failure to ask Dickerson to attend a consultative examination is not erroneous. The court thus finds that the ALJ's determination is based on substantial evidence.

    2.    <u>Frequency of Sitting and Standing</u>

The ALJ determined that Dickerson has the RFC to perform sedentary work with several limitations, including the need for a "sit/stand option." (R. 20). At the hearing, "[t]o determine the extent to which [Dickerson's limitations] erode the unskilled sedentary occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with the . . . residual functional capacity set forth above except for the sit/stand option." (R.26). Despite the inclusion of the sit/stand option in the hypothetical, Dickerson asserts that the ALJ failed to meet the burden set forth in SSR 83-12 and 96-9p by failing

to specify the frequency of Dickerson's need to alternate sitting and standing.[5] This assertion fails, however, because "[a]lthough the ALJ failed to specify the frequency that [Dickerson] needed to change his sit/stand position, the reasonable implication of the ALJ's description was that the sit/stand option would be at [Dickerson's] own volition." *Williams*, 140 Fed. Appx. at 937.  Thus, the ALJ met his burden under SSR 83-12 and 96-9p.  Moreover, Dickerson failed to show prejudice by presenting evidence that he is unable to perform the jobs identified by the vocational expert based on his inability to sit or stand for a specific period of time.  *See Williams*, 140 Fed. Appx. at 937-38.  Accordingly, the ALJ's RFC finding is supported by substantial evidence.

## VI.  CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Dickerson is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.

---

[5] SSR 83-12 states that in instances where "the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing . . . a VS should be consulted to clarify the implications for the occupational base." *Id.*  Additionally, where the occupational base for a full range of unskilled sedentary work is eroded by the need to alternate sitting and standing, "[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p.

**DONE** the 29th day of November, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE